**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. 22-cv-2981 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| CORNERSTONE BUILDING BRANDS, | : **SECURITIES EXCHANGE ACT OF** |
| INC., JAMES S. METCALF, ROSE LEE, | : **1934** |
| KATHLEEN J. AFFELDT, GEORGE L. | : |
| BALL, GARY L. FORBES, JOHN J. | : **JURY TRIAL DEMANDED** |
| HOLLAND, DR. WILLIAM E. JACKSON, | : |
| WILBERT W. JAMES, JR., DANIEL JANKI, | : |
| JOHN KRENICKI, JR., TIM O'BRIEN, | : |
| JUDITH REINSDORF, NATHAN K. | : |
| SLEEPER, JONATHAN L. ZREBIEC, | : |
| | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.  This is an action brought by Plaintiff against Cornerstone Building Brands, Inc. ("Cornerstone or the "Company") and the members Cornerstone's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Cornerstone by affiliates of Clayton, Dubilier & Rice, LLC ("CD&R")

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on April 7, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the Camelot Return Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Camelot Return Intermediate Holdings LLC ("Parent"), will merge with and into Cornerstone with Cornerstone surviving as a wholly-owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on March 5, 2022 (the "Merger Agreement"), each Cornerstone stockholder will receive $24.65 in cash (the "Merger Consideration") for each Cornerstone share owned. Parent and Merger Sub are both affiliates of CD&R.

1. As discussed below, Defendants have asked Cornerstone's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Centerview Partners LLC ("Centerview") in support of its fairness opinion.

2. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

3. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the

material information discussed below is disclosed to Cornerstone's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

5. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

6. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Cornerstone is traded on the New York Stock Exchange, which is headquartered in this District. The Company's proxy solicitor, MacKenzie Partners, Inc., is also headquartered in this District. Finally, the closing of the Proposed Transaction will take place in this District.

## PARTIES

7. Plaintiff is, and has been at all relevant times, the owner of Cornerstone stocks and has held such stocks since prior to the wrongs complained of herein.

8. Individual Defendant James S. Metcalf has served as a member of the Board since May 2017 and as the Executive Chairman of the Board since September 2021.

9. Individual Defendant Rose Lee has served as a member of the Board since September 2021 and is the Company's President Chief Executive Officer.

10. Individual Defendant Kathleen J. Affeldt has served as a member of the Board since November 2009.

11. Individual Defendant George L. Ball has served as a member of the Board since February 2014.

12. Individual Defendant Gary L. Forbes has served as a member of the Board since December 1991.

13. Individual Defendant John J. Holland has served as a member of the Board since November 2009.

14. Individual Defendant Dr. William E. Jackson has served as a member of the Board since May 2020.

15. Individual Defendant Wilbert W. James, Jr. has served as a member of the Board since May 2019.

16. Individual Defendant Daniel Janki has served as a member of the Board since May 2019.

17. Individual Defendant Daniel Janki has served as a member of the Board since May 2019.

18. Individual Defendant John Krenicki, Jr. has served as a member of the Board since November 2018.

19. Individual Defendant Tim O'Brien has served as a member of the Board since November 2018.

20. Individual Defendant Judith Reinsdorf has served as a member of the Board since August 2021.

21. Individual Defendant Nathan K. Sleeper has served as a member of the Board since October 2009.

22. Individual Defendant Jonathan L. Zrebiec has served as a member of the Board since November 2009.

23. Defendant Cornerstone is a Delaware corporation and maintains its principal offices at 5020 Weston Parkway, Suite 400, Cary, North Carolina 27513. The Company's stock trades on the New York Stock Exchange under the symbol "CNR."

24. The defendants identified in paragraphs 10-22 are collectively referred to as the "Individual Defendants" or the "Board."

25. The defendants identified in paragraphs 10-23 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.     The Proposed Transaction**

26. Cornerstone, together with its subsidiaries, designs, engineers, manufactures, markets, and installs external building products for the commercial, residential, and repair and remodel markets in the United States, Canada, Mexico, and internationally. The Company operates through three segments: Windows, Siding, and Commercial. Its Windows segment provides vinyl, aluminum, wood, and aluminum clad-wood windows and patio doors; and steel, wood, and fiberglass entry doors under the Ply Gem, Simonton, Atrium, American Craftsman, Silver Line, Great Lakes Window, and North Star brands. The Company's Siding segment offers vinyl siding and skirting, composite siding, steel siding, vinyl and aluminum soffit, aluminum trim coil, aluminum gutter coil, fabricated aluminum gutter protection, PVC trim and moldings, and window and door trim products, as well as injection molded accents, such as shakes, shingles, shutters and vents, vinyl fencing and railing, and stone veneer. Its Commercial segment designs, engineers,

5

manufactures, and distributes a range of metal products, such as metal building systems, metal roofing and wall systems, and coil coatings. The Company was formerly known as NCI Building Systems, Inc. and changed its name to Cornerstone Building Brands, Inc. in May 2019. Cornerstone is headquartered in Cary, North Carolina.

27. On March 7, 2022, the Company announced the Proposed Transaction:

> CARY, N.C.--(BUSINESS WIRE)--Cornerstone Building Brands, Inc. (NYSE: CNR) ("Cornerstone Building Brands" or the "Company"), the largest manufacturer of exterior building products in North America, today announced that it has entered into a definitive agreement to be acquired by affiliates of Clayton, Dubilier & Rice ("CD&R") in an all-cash transaction with an enterprise value of approximately $5.8 billion, including the assumption of debt.
>
> CD&R, in the aggregate, is currently the beneficial owner of approximately 49% of the Company's outstanding shares of common stock. The proposed transaction delivers substantial value to Cornerstone Building Brands' shareholders, who will receive $24.65 in cash per share, representing an approximately 16% premium to the closing price of the Company's common stock as of March 4, 2022, and an approximately 75% premium to the closing price of the Company's common stock as of February 4, 2022, the last trading day prior to speculation in the market regarding a potential transaction.
>
> The proposed transaction has been approved by a special committee of independent directors of the Company's Board of Directors (the "Special Committee") previously formed to evaluate and consider any potential or actual proposal from CD&R. The Board of Directors of the Company has approved the proposed transaction on the recommendation of the Special Committee.
>
> "We believe this transaction provides substantial value for our shareholders while also accelerating Cornerstone Building Brands' aspiration to become a premier exterior building solutions company," said Rose Lee, President and Chief Executive Officer of Cornerstone Building Brands. "We have grown our business and portfolio since 2018 when the Company was created, delivering high-quality exterior building products with a strong focus on being a partner of choice for our customers. CD&R will continue to be an outstanding partner as we advance our operational improvements

and innovation-driven growth to create many positive outcomes for our customers and employees."

"We are pleased to have reached this agreement with CD&R, which delivers a significant and immediate cash premium to our shareholders," said George L. Ball, Special Committee Chair. "The Special Committee thoroughly reviewed CD&R's proposal, considering the benefits of the transaction against other strategic alternatives available to the Company, including continuing as a publicly-traded company. Following this review, the Board determined this transaction is the best path forward for Cornerstone Building Brands and its shareholders. This transaction reflects the significant value of our business and leadership position in the building products industry."

J.L. Zrebiec, Partner at CD&R, said, "As a supportive long-term investor over a number of years, we have seen firsthand the significant value that Cornerstone Building Brands brings to its customers and communities across North America. The Company has an outstanding team and portfolio of products well-positioned to meet the needs of today's evolving market. We are confident that as a privately held company, with CD&R's operational and strategic support, Cornerstone Building Brands will be even better positioned in its next phase of growth." The proposed transaction will result in the Company becoming a private company and is expected to close in the second or third quarter of 2022, subject to customary closing conditions, including receipt of regulatory approvals. The transaction is subject to approval by holders of a majority of the shares not owned by CD&R and its affiliates.

**Advisors**

Centerview Partners LLC is serving as financial advisor to the Special Committee and Wachtell, Lipton, Rosen & Katz is serving as legal counsel to the Special Committee. Sullivan & Cromwell LLP is serving as legal counsel to Cornerstone Building Brands.

UBS Investment Bank, Barclays, BNP Paribas Securities Corp., Goldman Sachs, Jefferies, Natixis, New York Branch, RBC Capital Markets, and Societe Generale are providing financial advisory services to CD&R. Kirkland & Ellis LLP is serving as legal counsel on the transaction and Debevoise & Plimpton LLP is serving as legal counsel on the financing. CD&R has obtained committed financing from Deutsche Bank Securities Inc., UBS Investment Bank, Barclays, BNP Paribas, RBC Capital Markets, Societe Generale,

Goldman Sachs, Natixis, New York Branch, Jefferies, Apollo, Blackstone Credit, and U.S. Bank.

* * *

28. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Cornerstone's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.      The Materially Incomplete and Misleading Proxy Statement**

29. On April 7, 2022, Cornerstone filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

30. The Proxy Statement fails to provide material information concerning financial projections by Cornerstone management and relied upon by Centerview in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Centerview with forming a view about the stand-

alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Cornerstone management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

31.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA, Net Operating Profit After Tax, and Unlevered Free Cash Flow, but fails to provide a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

32.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

33.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the

measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

34. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

35. With respect to Centerview's *Selected Public Company Analysis*, the Proxy Statement fails to disclose the financial metrics for the companies selected by Centerview in the analysis.

36. With respect to Centerview's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the financial metrics for the transactions selected by Centerview in the analysis.

37. With respect to Centerview's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of implied terminal values for Cornerstone; (ii) the inputs and assumptions underlying the use of a range of perpetuity growth rates from 1.75% to 2.5%; (iii) the inputs and assumptions underlying the use of the range of discount rates of 10.0% to 12.5%; (iv) the Company's net debt as of December 31, 2021; and (v) the number of fully diluted outstanding shares of Cornerstone common stock.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

38. With respect to Centerview's *Analyst Price Targets Analysis*, the Proxy Statement fails to disclose the Wall Street research analysts observed and the targets published by these analysts.

39. With respect to Centerview's *Premia Paid Analysis*, the Proxy Statement fails to disclose the transactions reviewed and analyzed, and the consideration and the premia paid in those transactions.

40. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

41. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

43. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

44. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

45. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

46. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate

remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

47. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of Cornerstone within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Cornerstone, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Cornerstone, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Cornerstone, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue

contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

51. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.   Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.   Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.   Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.   Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 11, 2022

**MELWANI & CHAN LLP**

By: */s/ Gloria Kui Melwani*
Gloria Kui Melwani
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*